# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 20, 2008 Session

## MERRY LESHANE, as Next of Kin of WINNIE BRUMLEY, Deceased v. QUINCE NURSING AND REHABILITATION CENTER, LLC

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003414-06     John R. McCarroll, Jr., Judge**

**No. W2007-01484-COA-R3-CV - Filed October 14, 2008**

This appeal arises from the trial court's denial of Defendant/Appellant's motion to compel arbitration under an arbitration agreement contained in a nursing home admissions agreement. This is a direct appeal pursuant to Tennessee Code Annotated § 29-5-319(a)(1). We vacate and remand for further proceedings with respect to the issue of authority.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Hardin Chase Pitman and Rebecca Adelman, Memphis, Tennessee, for the appellant, Quince Nursing and Rehabilitation Center, LLC.

Frank B. Thacher, III, and Les Jones,  Memphis, Tennessee, and Mark Norman Geller, Memphis, Tennessee, for the appellee, Merry LeShane, as Next of Kin of Winnie Brumley, Deceased.

### MEMORANDUM OPINION[1]

Decedent Winnie Brumley (Ms. Brumely) was admitted to a nursing care facility in 2001 after suffering a stroke. The paperwork admitting her to the nursing center was signed by one of her

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

daughters, Merry LeShane (Ms. LeShane). Ownership of the facility changed hands in 2003, and the facility began operating as Quince Nursing and Rehabilitation Center, LLC ("Quince Nursing"). In November 2003, at the request of Quince Nursing, Ms. LeShane signed a new admissions agreement that included the arbitration clause at issue in this case. The agreement also was signed by Sheila Craft (Ms. Craft), admissions coordinator, on behalf of Quince Nursing. According to Ms. LeShane, she signed the agreement after returning home from vacation just before Thanksgiving and finding several telephone voice messages from Quince Nursing stating that Ms. Brumley would be discharged from the facility if Ms. LeShane did not immediately sign the new admissions agreement.

The admissions agreement signed by Ms. LeShane in November 2003 is 34 pages long. It includes five appendixes, executed in varying degrees of completeness. Appendix 3, an acknowledgment of receipt of privacy practices; Appendix 4, a financial agent's agreement; and Appendix 5, release of Medicaid information agreement, are separately signed. The agreement also includes four "exhibits." Exhibit A is an assignment of benefits agreement and is separately signed by Ms. LeShane. Exhibit C is a resident trust fund authorization and is signed by Ms. LeShane and Ms. Craft. Exhibit D is an unsigned "resident bill of rights."

The arbitration clause at dispute in this lawsuit is contained in Exhibit B. It is located on pages 29-30 of the 34-page admissions agreement. In the admissions agreement table of contents, it is subtitled "Exhibit B Arbitration Agreement." Within the agreement, it is sub-titled "Resident and Facility Arbitration Agreement." Exhibit B is separately signed and dated by Ms. LeShane and Ms. Craft. In addition to providing that all disputes are to be arbitrated under the Federal Arbitration Act, the arbitration agreement states:

> The parties understand and agree that this contract contains a binding arbitration provision which may be enforced by the parties, and that by entering into this arbitration agreement, the parties are giving up and waiving their constitutional rights to have any claim decided in a court of law before a judge and a jury, as well as any appeal from a decision or award of damages.

> The Resident understands that: (a) he/she has the right to seek legal counsel concerning this Arbitration Agreement; (b) execution of this Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility; and (c) this Agreement may be rescinded by written notice to the Facility from the Resident within thirty days of signature. If not rescinded within thirty days, this Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility.

> The undersigned certifies that he/she read this Agreement, that it has been fully explained to him/her, that he/she understands its contents, that he/she has received a copy of the provision and that he/she is the Resident, or a person duly authorized by the Resident or otherwise to execute this Agreement and accept its terms.

In August 2005, Ms. Brumley underwent surgery to amputate her leg as a result of gangrene in her foot. Ms. Brumley died on December 21, 2005. In June 2006, a complaint for damages naming Ms. Brumley as Plaintiff was filed against Quince Nursing & Rehabilitation Center, LLC ("Quince Nursing") in the Circuit Court for Shelby County.[2] The complaint alleged negligence, violation of the Tennessee Adult Protection Act, violation of the Tennessee Nursing Home Residents' Rights Act, medical malpractice, violation of the Omnibus Budget Reconciliation Act of 1987, gross negligence, outrage, breach of contract, and breach of fiduciary duty. It sought compensatory and punitive damages. In September 2006, Plaintiff/Appellee Merry LeShane filed an amended complaint pursuant to Rules 15 and 17 of the Tennessee Rules of Civil Procedure, naming herself, as next of kin of Winnie Brumley, deceased, as Plaintiff.

Quince Nursing filed a motion to compel arbitration or, alternatively, a motion to dismiss under Rule 12.02(6). In its motion, Quince Nursing asserted, *inter alia*, that Ms. LeShane's claim was subject to arbitration under the 2003 admissions agreement. Ms. LeShane opposed the motion on the grounds that the arbitration clause was not enforceable because it was "unconscionable and beyond the reasonable expectations of ordinary persons." Ms. LeShane additionally asserted that the arbitration agreement was severable from the remainder of the contract; that it was "buried" within the admissions agreement; and that it did not explain the arbitration process or indicate that "the resident is waiving her constitutional right to a jury trial." Ms. LeShane also asserted that Quince Nursing failed to "rectify the facial deficiencies in the arbitration agreement."

The matter was heard by the trial court in May 2007. At the hearing, Ms. Craft testified that it generally took 30 minutes or more to explain the admissions process to a resident or family member. She further testified that her customary explanation to the resident or family member about the arbitration clause included an erroneous statement that they were not waiving their right to sue in a court of law. Ms. Craft testified that "that's the way [she] understood it." Ms. Craft was asked "you were asking people to sign an agreement waiving their right to sue in court, but at the same time, you were telling them that they still had the right to sue in court, correct?" She replied, "Yes."

Ms. Craft additionally testified at the May hearing that she had no interaction with Ms. Brumley herself, and that she did not specifically recall meeting with Ms. LeShane regarding the admissions agreement. Ms. LeShane, however, testified that the admissions agreement was signed in a hurried process over two or three minutes. She testified that Ms. Craft essentially pointed to where she should sign, offering no explanation of the agreement. Ms. LeShane testified that she did not ask for a copy of the agreement, and was not offered one. When asked why she did not ask for a copy, Ms. LeShane replied:

> Because of the way it was presented, I figured it was exactly what I had signed before, and we had been certainly happy enough with the place.

Ms. LeShane also testified that she did not read the admissions agreement, but thought she was "signing the same thing" as the 2001 agreement. She stated, "[i]t was just a readmission so my

---

[2]The complaint also named Mohan M. Gehi, MD, as a Defendant.

mother wouldn't be discharged." Ms. LeShane also testified that she thought the only options she had at the time she signed the agreement, the week before Thanksgiving, were to sign it or have Ms. Brumley discharged from the facility.

The trial court denied Quince Nursing's motion to compel arbitration by order entered June 8, 2007. In its order, the trial court found that Ms. LeShane had executed the admissions agreement on behalf of her mother, Ms. Brumley; that the arbitration agreement was not a "take-it-or-leave it" contract of adhesion; and that the arbitration agreement was not unconscionable. The trial court also found, however, that Ms. Craft's "customary explanation" of the arbitration agreement was inaccurate, and that she had given an inaccurate explanation to Ms. LeShane. The court found that Ms. Craft's inaccurate explanation was not an act of fraud, but that she simply had been mistaken in her understanding of the agreement. The trial court denied Quince Nursing's motion to compel arbitration on the basis of the inaccurate explanation. Quince Nursing filed a timely notice of appeal to this Court, raising, as its sole issue:

> Did the trial court err in denying Appellant's motion to compel arbitration, which was predicated upon an arbitration agreement that Merry LeShane, a daughter of Winnie Brumley, signed for her mother in connection with her mother's admission to Appellant's skilled nursing facility?

The matter was docketed for oral argument to be held August 28, 2008.[3] On August 19, 2008, Ms. LeShane filed a motion to continue oral argument in order to permit the parties to brief and argue the issue of authority in light of this Court's holdings in *Thornton v. Allenbrooke Nursing and Rehabilitation Center, LLC*, No W2007-00950-COA-R3-CV, 2008 WL 2687697 (Tenn. Ct. App. July 3, 2008) and *Ricketts v. Christian Care Center of Chetham County, Inc.*, No. M2007-02036-COA-R9-CV, slip op. (Tenn. Ct. App. Aug. 15, 2008). Quince Nursing filed a motion in opposition. We denied Ms. LeShane's motion to continue but granted the parties additional time to supplement their briefs with respect to the issue of authority.

Upon review of the record, we note that the issue of authority was before the trial court where counsel for Quince Nursing specifically questioned Ms. LeShane regarding her authority to sign the admissions agreement. Accordingly, in light of the arguments made by the parties in response to our order granting them additional time to supplement the issues on appeal with respect to the issue of authority, we vacate the trial court's order denying arbitration and remand for further proceedings and findings with respect to whether Ms. LeShane had authority to execute the admissions agreement on behalf of Ms. Brumley. Costs of this appeal are taxed one-half to the Appellee, Merry LeShane,

---

[3] The original oral arguments of this appeal were heard in January 2008, before a panel including Judge Frank Crawford. Judge Crawford passed away on April 17, 2008, prior to resolution of the matter. Oral argument was rescheduled for August 2008 in order that the matter could be reheard by a full panel of the Court.

as Next of Kin of Winnie Brumley, deceased, and one-half to the Appellant, Quince Nursing and Rehabilitation Center, LLC and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE